Now, we have no argument in this case from the appellant, Mr. Ferris, who will be presenting an argument for the PAPL lead. And why don't you proceed when you're ready. I should say, just for the record, we also have no argument from the PTO, so it is the private party who will be arguing. MR. FERRIS Yes. Good morning, Your Honor. May it please the Court. I am representing just one of two appellees, Vidya. The other party is not being here today. This is an appeal from a decision by the Board of Patent Appeals and Interferences in a parties' reexamination proceeding. Now the issues on appeal, there are several identified in the appellant's blue brief, but the first one listed, and probably the most important one here, is did the Board err in its claim construction of the appeal claims. And I was going to talk about that first and foremost, and if I have time, I'm going to talk about the other issues, which are the rejections on the merits and if there, in fact, is a new rejection. So the first issue, did the Board err? Well, when it comes to claim interpretation, there are several principles the Board has to abide by. One, you look at the claim language itself, and of course, that should be the focal point in construing the claims. Two, you review the specification. You look at the specification to give some sort of guidance. But one thing you have to do when you look at the specification is you cannot import any limitations from the specification and into the claims. So there is this kind of juxtaposed requirements that you have to look at the  Now, also, the reason why you review the specification is for any inconsistency. For instance, when I say inconsistency, claims are presumptively given their ordinary customary meaning, but did the patent owner rebut that presumption? For instance, was the patent owner his own lexicographer? Or do the claims lack such clarity that you actually have to look at the And there's no evidence on record that either of those two criteria have been met. And also, when it comes to patentability, the Patent Office reviews the claims under the broadest reasonable interpretation standard. Now, I know that that is a tool. It is not a rule of claim construction. However, it is a tool you use to get to the right claim construction. And so the board applied What do you think that rule ought to apply in this kind of setting as opposed to the normal application of that rule, which is in an application examination prior to issuance of the patent? Because the rationale in the pre-issuance setting is that you don't want a patentee coming in and saying, well, to the examiner, suggesting a possible narrow construction of an ambiguous claim, getting a patent despite the hierarchy that's floating around in the vicinity, and then later coming out in litigation and arguing for a very broad claim. So the PTO says, we're going to solve that problem by saying, we're going to assume a reasonably broad construction. And if you want to narrow it, you have the clarity at all to do so in the course of the prosecution. It seems to me that in the examination setting such as this, it's more like a situation that arises in other post-issuance settings. Why not? I think the standard is fair because of the reasons you stated in a sense that there is a public policy that you don't want claims to issue that are broader than justified. Justified meaning maybe the claims, when they're construed, that it would read upon what's already in the prior art. And applying that standard is not unfair, like as you stated, to the applicant or patentee in a sense that they do, the patent owner has a chance to amend the claims to be more clear, precise, not ambiguous, and probably more important in this case to not read on the prior art. So maybe if you're questioning why it comes up in more re-exams, I don't have the answer to that, but I know that because of a third party has a chance to participate more in inter-parties re-exams, they can bring this issue up more. And also, when we talk about this inter-party re-examination, it was granted for a reason. There are new substantial questions of patentability. There are newly cited references in this re-examination. And so there's nothing unfair here to the patent owner when applying the broadest reasonable interpretation standard. And, in fact, you had the decision from last year, the NRA SUCO surface case. That case was actually even discussed during oral arguments before the Board last year because it just issued. And we had the oral arguments before the Board, and the Board even questioned why should we even apply this broadest reasonable interpretation standard because we got basically deemed ones for it. But as stated by this Court before, that it is a tool you can use. It is not a rule of claim construction, but you can get to the right claim construction. And it's not unfair, as I said, to the patent owner because they have a chance to amend the claims if there's some sort of ambiguity or if the prior art reads on the claims. Okay. So I think when it comes to these principles, it is clear the Board did not err in applying these principles, and its claim construction was proper. I think the primary flaw of the appellants, which is also the patent owner, is the plain language of the claims itself. When you look at the claims, it cannot have that narrow construction. This is an invention directed to a purifying process for phosphatidylserine, or PS. There's two independent claims, and both claims recite a precursor conversion step where you take a source of phosphatidylcholine to convert it into the PS. There's a second step, and in claim one, it's this extraction from a solution of the three solvents, water, alcohol, and hydrocarbon solvent. And then there's claim 16, the other independent claim. It does not recite extraction. It recites stirring a mixture of the three solvents. And that's it. From day one, the first office action, the patent owner was on notice of what the USPTO's claim construction was of purifying process, as appears in the preamble, and extraction, or stirring. And the PTO did explain extraction can mean stirring, it can mean separation, isolation, it can mean a lot of different things. And the patent owner has argued now on appeal that they want the claims to be construed to mean removal of two specific impurities. And that is just not, I think the primary flaw of the patent's argument is just by looking at the plain reading of the claims. There's nothing in the claims that recite a removal of these specific impurities. It doesn't recite impurities at all, as even being at the end of the extraction or stirring step. So that argument is quite flawed by just looking at the claims. But even so, even when you look to the specification, the removal of two specific impurities are not even discussed in the specification. If you look at the specification, it talks about impurities generally, and in fact, what the appellants want is removal of serine and the PLD enzyme. You look at the specification, it talks about serine, it says such as serine, meaning exemplary. It's not even a preferred embodiment. So if you, besides looking at the plain language of the claims, if you look to the specification, it does not support the appellant's position that the claims should be narrowed to two specific impurities. It's just, it's not in the specification, and the Board was proper in not importing that limitation into the claims. So the Board abide by all the principles in coming in proper claim construction. So I was going to go into the rejection on the merits, I guess, if the board has, if the owner has any questions. So there's several outstanding rejections here on appeal. There's an anticipation, there's some obviousness, and obviousness type double patenting. Regarding the anticipation, the site of reference is called ABEDE. It's a review scientific article. ABEDE discloses everything that's in the claims. There's no, there's actually, there's little doubt. If you look at the Board decision with their findings of fact, they cite specific portions of ABEDE that reads on the claims. The appellants are contending and they're relying upon their claim construction where they want the removal of the two specific impurities. Well, the reason why they want that is they want the narrower scope, so that way they can overcome the prior. Because that claim construction by the appellants was not adopted, they have all kinds of problems with the prior. ABEDE discloses the precursor conversion step from phosphorylcholine into phosphorylserine, and it discloses stirring or extraction. It's very clear in there, especially in paragraph 2.12, it discloses all three solvents together, and it talks about phosphorylserine being extracted by two layers. So it's very clear that the anticipation rejection is valid. As far as the obviousness rejections go, the primary reference is this DEFERA 668 patent. There's no arguments by appellants as to what it not discloses. It's admitted by the examiner, by the board of firm, that it does not disclose the solvent water, but it discloses every other feature. Of course, that's why secondary references are brought in, because it discloses not just water, but water in combination with the other two solvents, the hydrocarbon solvent and the alcohol solvent. And the reasoning to combining those references is one of the strongest rationale for obviousness, and that is, does the prior explicitly or even implicitly disclose an advantage when you have that combination? It's clear that these secondary references disclose the advantage. Maybe it's not the advantage the patent owner wanted, was trying to contest, but the references clearly disclose that, for instance, if you use hexane isopropanol, it's cheaper and it's better than other solvents, and it's more environmentally friendly. And also, the three solvents are disclosed in the secondary references showing extraction of the phosphatidylserine, or that the impurities can reside in the other layer. So there's no question about that. What the appellants have been doing in the briefs have been attacking the references individually. For instance, they attack the secondary reference saying, well, they don't disclose our precursor step. Well, that doesn't matter, because that precursor step was already disclosed in the primary reference. It doesn't matter. What the examiner does is she applies the scientific concept that these solvents together will have removal or extraction of phosphatidylserine. That's clearly disclosed in the secondary references, and that is the strongest rationale for combining the primary reference with the secondary reference. So if this Court agrees that there is no error in the claim construction, it is our position all the rejections should be affirmed. Even so, all the rejections on the merits should be affirmed anyway, because the references disclose the removal of these impurities. So it doesn't even matter. Now, another issue that came up was that the Patent Office submitted a declaration under Rule 132 showing allegedly unexpected results. Well, there were all kinds of problems with the experimental data and the declaration, as pointed out in the briefs. The first is that the data was not commensurate in scope with the claims. The second was the data wasn't even unexpected or superior. And third, there was no comparison to the closest prior art example. Now, as far as commensurate in scope, of course the patent owner has tested embodiments that fall within the claims. That's not the issue. The issue is, does that data correspond to the full scope of the claims? And there are several problems with that. For instance, if you look at one inventive trial versus another inventive trial, you get a big disparity in how much impurity is removed. So by looking at this big disparity, how can you even allege that the data is fully commensurate in scope with the claims, wherein the claims merely recite alcohol solvent or hydrocarbon solvent? And also, the results aren't even unexpected. If you look at the declaration, say, Trial 6 versus Trial 7, Trial 7 actually removes more of the PLD enzyme. It's better at removing specific impurities. So even if you adopted the patent owner's claim construction, the declaration shows that that invention is not even patentable because the comparative example, which is only two solvents, achieves better removal impurities than the inventive example that has three solvents. And also, there's no comparison to the closest prior example. The facts are clearly laid out that there's no reproduction of the primary reference. There's differences in starting material. For instance, when the phosphatidylserine is made in the prior, they use toluene. In the declaration, they use water. So how do you even know how much phosphatidylserine and how many impurities are present to begin with? You don't know. So there's no proper comparison to the closest prior example. And finally, the last issue identified in the blue brief is that whether or not the examiner made a new rejection in the examiner's answer. Well, it's clearly set forth in even Director Capo's brief. This is not an issue that's proper for the court. That issue should have been done by petition, which in fact was done by petition by the patent owner, and the petition was dismissed. Any remedy for that dismissal of the petition should have been done through district court and not before this court. And further, the fact that it was in the examiner's answer, the patent owner did not even address that issue in filing the rebuttal brief. So the issue wasn't even before the Board of Patent Appeals and Interferences. And so I think the last issue identified in the blue brief should not even be decided on the merits. It should just be dismissed. Thank you.